RECEIVED

JUL 1 8 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

IN RE:

SHANNON JUDE WILKERSON                    CIVIL ACTION NO.: 12-2210

VERSUS                                     JUDGE DOHERTY

PAUL N. DEBAILLON, TRUSTEE                 MAGISTRATE JUDGE HILL

## MEMORANDUM RULING AND ORDER

Appellant, Shannon Jude Wilkerson ("Wilkerson"), brings this appeal pursuant to 28 U.S.C. §158(a) from a Judgement entered by the United States Bankruptcy Court for the Western District of Louisiana on February 29, 2012 (Bankr. Doc. 29), where the Bankruptcy Court revoked Wilkerson's Chapter 7 discharge, and an Order dated May 8, 2012 (Bankr. Doc. 33) where the United States Bankruptcy Court denied Wilkerson's "Motion for a New Trial or Alternatively, to Allow Additional Evidence."

## I. Factual and Procedural Background

The factual background of this matter has been set forth in the Bankruptcy Court's February 15, 2012, "Memorandum Ruling," (Bankr. Doc. 27) issued prior to the Court's Order "Judgement Revoking Discharge of Shannon Jude Wilkerson" entered February 29, 2012. (Bankr. Doc. 29) Neither party has objected to the facts as set forth by the Bankruptcy Court in its Memorandum Ruling, therefore, in order to give a contextual basis and to create a complete record, this Court will adopt the factual background as set forth by the Bankruptcy Court in its Memorandum Ruling, and supplemented by this Court, as set forth herein:

Wilkerson was primarily in the business of owning and managing nightclubs, and handled significant amounts of cash in connection with his business. Wilkerson first filed for relief under

Chapter 11 of the Bankruptcy Code in June 2003.  That case was subsequently dismissed in June 2005 without Wilkerson receiving discharge. (Bankr. Tr. Ex. 22) The dismissal order provided that Wilkerson was barred from filing for relief under any chapter of the Bankruptcy Code for a period of two (2) years.  On January 21, 2008, Wilkerson filed for relief under Chapter 7 of the Bankruptcy Code.  Wilkerson received a Chapter 7 discharge on February 13, 2009.  Several of Wilkerson's business entities have also filed for relief under the Bankruptcy Code.

Wilkerson filed his required schedules in connection with his 2003 Chapter 11 case and his 2008 Chapter 7 case. Question number 12 of Wilkerson's Statement of Financial Affairs ("Question 12") required him to identify "each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case." (Bankr. Tr. Ex. 23 & 25); (Doc. 3-17, p. 32 & 3-18, p. 32) Wilkerson's response to this question was "none" on both of the Statements of Financial Affairs filed in his 2003 and 2008 cases. *Id.* Contrary to these representations, the record reflects that Wilkerson, in fact, had two safe deposit boxes with Whitney Bank at the time he filed his schedules in both bankruptcy cases.  The first safe deposit box was initially rented in January 1994, and the second safe deposit box was initially rented in January 1997. (Bankr. Tr. Ex. 1) Wilkerson testified that he used the boxes for "cash savings," and to store cash for business deals.  He testified that he liked to see his savings in the form of cash as opposed to an entry on a bank statement.  Wilkerson testified that he frequently accessed the boxes prior to 2000.  Whitney Bank's access records for both safe deposit boxes show that the last time either of the boxes were accessed by Wilkerson was in 2000. (Bankr. Tr. Ex. 1)

In June 2006, Whitney Bank sent Wilkerson "drill notices" stating that the rent for the two boxes was delinquent.  These drill notices were apparently sent to the business address of one of the Wilkerson's clubs that had previously closed.  Wilkerson testified that he did not receive the notices.

On March 18, 2008, Whitney Bank opened the two safe deposit boxes after it received no response from Wilkerson.  One of the safe deposit boxes contained $70,000 in cash. Counsel for Whitney Bank sent a letter to the U.S. Attorney on January 9, 2009 that $70,000 was found in a deposit box belonging to a Shannon Wilkerson. (Doc. 3-15)  By letter dated March 16, 2009, the U.S. Attorney notified the Trustee that Whitney Bank had advised the U.S. Attorney of the safe deposit boxes and their contents, namely the $70,000. (Doc. 3-15)  On March 21, 2011, Wilkerson pled guilty in federal court to a charge of failing to disclose the safe deposit box containing $70,000 in connection with his 2003 bankruptcy case.  In stipulated facts entered in connection with the Wilkerson's guilty plea, Wilkerson admitted that: (1) he was asked whether he had any safe deposit boxes, (2) he "knew he had safe deposit boxes, and had reason to believe they still contained cash," and (3) Wilkerson failed to disclose the safe deposit boxes and their contents. (Bankr. Tr. Ex. 21) Wilkerson also did not disclose the safe deposit box and cash in the bankruptcy cases filed by his various business entities.

## II. Jurisdiction

This Court has jurisdiction to hear appeals from final judgements, orders or decrees of the bankruptcy court under 28 U.S.C. § 158(a). In pertinent part, pursuant to 28 U.S.C. § 158(a), "[t]he district courts of the United States shall have jurisdiction to hear appeals *from final judgments, orders, and decrees* of bankruptcy judges . . ." 28 U.S.C. § 158(a) (emphasis added).

## III. Issues Presented

Appellant Wilkerson raises the following issues on appeal: (1) whether the bankruptcy court erred in revoking Wilkerson's Chapter 7 discharge under 11 U.S.C. § 727(d)(1); (2) whether the bankruptcy court abused its discretion in refusing to admit post-trial evidence or in the alternative grant a new trial.

### III. Standard of Review

A district court hearing an appeal from a final ruling or decision of a bankruptcy court rulings employs the same standard of review applied in federal court of appeals. *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013), *citing Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *see also In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). This standard  requires a district court to review a bankruptcy court's conclusions of law and mixed questions of law and fact, *de novo*. *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). The bankruptcy court's findings of fact, however, are reviewed for clear error. *Id.*  Further, the Federal Rules of Bankruptcy Procedure, Rule 8013, provides, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.  Moreover, "[i]f a finding is not supported by substantial evidence, it will be found to be clearly erroneous." *In re Westcap*, 230 F.3d 717, 725 (5th Cir. 2000), *citing Wright & Miller*, 9A Federal Practice & Procedure, §2585, p. 576 (1995).  The Supreme Court defines "clearly erroneous" as,

> [w]hen although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. This standard plainly does not entitle a reviewing court to reverse the finding of a trier of fact simply because it is convinced that it would have decided the case differently ... If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing] court ... may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citations omitted). This Court  will not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Martin,* 963 F.2d at 813-14. Further, this Court must be "left with the

definite and firm conviction that a mistake has been made," before we will disturb the bankruptcy court's factual findings. *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir.2003). As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, this Court–functioning as an appellate court–will not reverse it. *Id. see also  In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005).

## IV. Law and Discussion

The central question of Wilkerson's appeal is whether the Bankruptcy Court erred in finding that Wilkerson obtained his previously granted discharge through fraud. Wilkerson argues several points of error that contributed to the Bankruptcy Court's decision to revoke Wilkerson's discharge. [Rec. Doc. 10, p. 2] A discharge granted under § 727(a) may be revoked under 11 U.S.C. § 727 (d), upon request of a trustee or creditor and after a hearing, in limited circumstances.[1]  In the instant matter, 11 U.S.C. § 727 (d)(1) provides that a discharge shall be revoked if, "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after granting of such discharge..." 11 U.S.C. § 727 (d)(1). Moreover, a "party attempting to revoke a debtor's discharge under 727(d)(1) must show 1) the discharge was obtained through fraud of the debtor, 2) the party requesting the revocation did not know of the debtor's fraud until after the

---

[1] A discharge can be revoked under 11 U.S.C. § 727,

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke discharge granted under subsection (a) if–

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge; ... ."

discharge was granted, and 3) grounds exist which would have prevented the debtor's discharge had they been known." *United States v. Harrison*, 366 B.R. 656, 660 (S.D. Tex. 2007) aff'd, 273 F. App'x 315 (5th Cir. 2008), *citing In re Landry*, 350 B.R. 51, 56 (Bankr. E.D. La. 2006). Additionally, the trustee must show "that the debtor's actions or mistakes were knowingly made, and that the mistakes were material . . . ." *In re Darby*, 376 B.R. 534, 541 (Bankr. E.D. Tex. 2007). Courts have held, the trustee can satisfy the burden of fraudulent intent or recklessness, by evidence of "the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or creditors or that the debtor acted so recklessly in not reporting the asset that fraud is implied."[2] *In re Colish*, 289 B.R. 523, 541 (Bankr. E.D.N.Y. 2002) (citing 4 Collier on Bankruptcy ¶ 727.15[4] (1992)); *In re Landry*, 350 B.R. at 59. "[A] finding of fraudulent intent may be based on inferences drawn from a course of conduct . . . [or] from all of the surrounding circumstances." *In re Darby*, 376 B.R. at 541, *quoting Matter of Yonikus*, 974 F.2d 901, 905 (1992). Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances. *Matter of Reed*, 700 F.2d 986, 991 (5th Cir.1983).

A.    **The Bankruptcy Court's Ruling**

In the instant case, after a trial on Trustee's Petition to Revoke Discharge, the Bankruptcy Court found that Wilkerson's explanation that he simply "forgot" about the safe deposit box and the fact that it contained $70,000, was not credible. In coming to this finding the Bankruptcy Court weighed Wilkerson's testimony that "he enjoyed seeing his savings in cash, and that he visited the safe deposit box frequently prior to 2000." (Bankr. Doc. 27, p. 6) Moreover, Wilkerson, in connection with a guilty plea admitted that he "knew he had safe deposit boxes, and had reason to

---

[2]*But see In re Heil*, 289 B.R 897, 903 (Bankr.E.D.Tenn.2003); *In re Stedham*, 327 B.R. 889, 897 (Bankr.W.D.Tenn.2005); *In re Landry*, 350 B.R 51, 59 (Bankr.E.D.La.2006) ("[Plaintiff] must establish that the Debtor 'committed fraud in fact, not fraud in law, implied fraud.' ").

believe they still contained cash," when he filed his schedules in the 2003 bankruptcy. (Bankr. Tr. Ex. 21) Wilkerson argued at trial, and argues again on appeal, that in support of his contention that he was not committing fraud to warrant revocation, his car was repossessed, his home foreclosed on. (Bankr. Doc. 27, p. 7) The Bankruptcy Court reasoned, "[s]ince the Debtor filed [the 2003 case] and his schedules after his business began to decline and his car was repossessed in 2003, [Wilkerson] cannot rely in these facts to support his claim that he had forgotten about the cash." (Bankr. Doc. 27, p. 7)

Indeed, the Bankruptcy Court, in turn, discredited all of the evidence Wilkerson put forth to make his case. Denouncing Wilkerson's argument that he "subsequently forgot about the safe deposit box and cash when he filed his second case in 2008 - merely 3 years after the 2005 dismissal of his first case." (Bankr. Doc. 27, p. 7) Similarly, the Bankruptcy Court found that the foreclosure of Wilkerson's home "does not overcome the weight of the evidence, considered as a whole, that [Wilkerson] knew about the safe deposit box and cash at the time he filed his schedules in the 2008 case." (Bankr. Doc. 27, p. 7)

In discrediting the report of Dr. F. T. Friedberg, the Bankruptcy Court found that the "psychological report by Dr. F. T. Friedberg does not support [Wilkerson's] position that any omissions or misstatements in his bankruptcy schedules were the result of his mental condition *at the time he filed the schedules*." (Bankr. Doc. 27, p. 7) The Bankruptcy Court reasoned that Dr. F.T. Friedberg's "observations and conclusions were drawn from his examination of [Wilkerson] March 1, 2011." (Bankr. Doc. 27, p. 7) The schedules in the bankruptcy case at issue in the instant matter, the 2008 case, were filed on were filed on February 8, 2008. (Joint Pre-Trial Stipulations of Fact, Doc. 3-4, p. 4) Thus, the Bankruptcy Court concluded that "Dr. Friedberg could not opine on [Wilkerson's] mental condition based on a direct examination of [Wilkerson] at the time he filed the

bankruptcy schedule in the 2008 case." (Bankr. Doc. 27, p. 8)

Consequently, the Bankruptcy Court, after a trial on the merits, found "the Trustee has proven by a preponderance of the evidence that the Debtor knew about the safe deposit box and the cash at the time he filed his schedules and answered Question 12 of his Statement of Financial Affairs in connection with the present bankruptcy case." (Bankr. Doc. 27, p. 8) Finally, the Bankruptcy Court, found that the $70,000 "omission and false statement on the Statement of Financial Affairs is material." (Bankr. Doc. 27, p. 8) The Bankruptcy Court then revoked Wilkerson's discharge, by Order dated March 1, 2012. (Bankr. Doc. 29) Subsequently, the Bankruptcy Court entered an Order denying Wilkerson's "Motion for a New trial or Alternatively, to Allow Additional Evidence" on May 8, 2012. (Bankr. Doc. 33)

### B. Discussion and Analysis

The Bankruptcy Court held a trial in this matter where both Wilkerson and the Trustee argued their case, and presented their strongest evidence in arguing their side. Wilkerson argues, five points on appeal, of which this Court has condensed into 2 distinct questions that Wilkerson argues in his brief.[3]

---

[3] In the Appellant's Brief and/or Memorandum, Wilkerson presents the following questions, however, he only argues the main points addressed above:
1) Did the Bankruptcy Court err in concluding that Shannon Jude Wilkerson knew about the safety deposit box and the cash contained therein at the time he answered Question 12 of his Statement of Financial Affairs filed on February 8, 2008 in connection with his bankruptcy case?
2) Did the Bankruptcy Court err in finding that psychological report by Dr. F.T. Friedberg did not support the Debtor's position that any omissions or misstatements in his bankruptcy were the result of his mental condition at the time he filed the schedules?
3) Did the Bankruptcy Court err in finding that the conduct and inferences from the totality of the circumstances in this case did not prove the Debtor's lack of fraudulent intent?
4) Did the Bankruptcy Court abuse its discretion in refusing to admit additional evidence regarding the mental condition of the Debtor after the close of evidence?
5) Was the Bankruptcy Court erroneous in revoking the Chapter 7 discharge granted to Shannon Jude Wilkerson?
(Rec. Doc. 10, p 2) As Wilkerson chose not to address the remaining points exclusively, and as this Court finds no support for those points in either the argument or evidence this Court finds Wilkerson failed to carry his burden as to these remaining points.

**Did the Bankruptcy Court commit Clear Error in Concluding that Wilkerson Knowingly and Fraudulently Omitted the Safe Deposit Boxes from his Statement of Financial Affairs?**

This Court does not find that the Bankruptcy Court erred in concluding that Wilkerson committed fraud sufficient to justify revocation of his discharge pursuant to §727(d)(1). The determination as to credibility of a witness is within the province of the bankruptcy judge-i.e. the trier of fact. *In re Anderson*, 936 F.2d 199, 204 (5th Cir.1991) ( "The bankruptcy court is in the best position to judge the credibility of any witness who testifies under oath before it ..."); *Matter of Texas Mortgage Services Corp.*, 761 F.2d 1068, 1078 (5th Cir.1985) ("We will not attempt to reassess the credibility of witnesses whom we have not had an opportunity to see on the stand"). Wilkerson argues that "Judge Summerhays overlooked the significant circumstantial evidence in the record of this case supporting Wilkerson's contention that he inadvertently and mistakenly failed to list the safe deposit boxes and cash therein." (Doc. 10, p. 18) In support of his argument for error, Wilkerson cites to evidence that: "[Wilkerson] had ample opportunity to remove the money from the safe deposit boxes." (Doc. 10, p. 18) "[O]ver 92 months (7 ½ years) had passed without anyone viewing the contents of box #531."[4] (Doc. 10, p. 18) "Wilkerson has his only vehicle repossessed and sold at sheriff sale. He could have used a part of the $70,000.00 to retain his only vehicle." (Doc. 10, p. 18) "Wilkerson lost his family home to sheriff sale...[the] home had at least $120,000.00 in equity." (Doc. 10, p. 18) and finally, "[i]f Wilkerson had known about the safe deposit boxes, all Wilkerson has to do was to continue to pay the yearly box rental of $140.00 or pay Whitney Bank the $420.00 of past due box rent. (Doc. 10, p. 18)

Contrary to Wilkerson's argument, the Bankruptcy Court in reaching its decision, after

---

[4] This Court notes that the last rent payment on the safe deposit boxes was made by a business partner of Wilkerson's on October 13, 2004–of which Wilkerson might or might not have known–with the next rent installment due on June 6, 2006. (Joint Pre-Trial Stipulations of Fact, Doc. 3-4, p. 3)

considering all of the same circumstances argued by Wilkerson at trial, did not find the argument that Wilkerson simply "forgot" about the $70,000 to be credible.  In finding that Wilkerson knew about the $70,000 when he failed to disclose that amount in the Statement of Financial Affairs, the Bankruptcy Court reasoned that Wilkerson testified that "he enjoyed seeing his savings in cash, and that he visited the safe deposit box frequently prior to 2000." (Bankr. Doc. 27, p. 6) Moreover, Wilkerson stopped visiting the safe deposit box around the time his business started to experience financial problems. (Bankr. Doc. 27, p. 7) Finally, Wilkerson "in connection with his guilty plea...admitted that he 'knew he had a safe deposit boxes, and had reason to believe they still contained cash,' at the time he filed his 2003 case." (Bankr. Doc. 27, p. 7) The 2008 case, which is the relevant case for our purposes, was only three years after the 2005 dismissal of his first case–where Wilkerson has admitted knowledge of the safe deposit boxes and admitted he had reason to believe they still contained cash, is contrary to the argument that Wilkerson now makes.

The Bankruptcy Court reasoned, "[s]ince the Debtor [Wilkerson] filed [the 2003] case and his schedules *after* his businesses began to decline and his car was repossessed in 2003, he cannot rely on these facts to support his claim that he had forgotten about the cash." (Bankr. Doc. 27, p. 7) Further, the Bankruptcy Court reasoned, "[n]or is the Debtor's argument credible that he subsequently forgot about the safe deposit box and cash when he filed his second case in 2008 - merely 3 years after the 2005 dismissal of his first case." (Bankr. Doc. 27, p. 7) Finally, the Bankruptcy Court reasoned, "[t]he foreclosure of the Debtor's home in 2006 does not overcome the weight of the evidence, considered as a whole, that the Debtor knew about the safe deposit box and cash at the time he filed his schedules in the 2008 case." (Bankr. Doc. 27, p. 7)

After a review of the record, the Bankruptcy Court did not, as Wilkerson argues, "commit clear error in completely ignoring the significant circumstantial evidence in this case..." (Doc. 10,

p. 16) Instead, the Bankruptcy Court evaluated the circumstances offered by Wilkerson and determined that they were either not credible, or did not overcome the weight of the evidence to the contrary.  As long as there are two permissible views of the evidence, this Court will not find the Bankruptcy Court's choice between competing views to be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted). If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, this Court will not reverse it. *Id.*  Therefore, this Court does not find that the Bankruptcy Court, given the record as a whole, committed clear error.

   *Dr. F. T. Friedberg*

   Wilkerson further argues on appeal, "Judge Summerhays totally disregarded and ignored the diagnosis of Dr. F.T. Friedberg regarding the mental condition of Wilkerson." (Doc. 10, p. 20) Wilkerson characterizes this error as "disregarding the diagnosis and findings Dr. F.T. Friedberg which prove that Wilkerson did not knowingly and fraudulently fail to disclose the existence of the safe deposit boxes." (Doc. 10, p. 20)  This Court does not find that the Bankruptcy Court erred in finding that the testimony of Dr. F. T. Friedberg was not credible. Pursuant to Federal Rule of Bankruptcy Procedure, Rule 8013, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr. Rule 8013.  The Bankruptcy Court did not choose to "ignore" or "disregard" the diagnosis of Dr. F.T. Friedberg, rather, and more precisely, the Bankruptcy Court determined that the report by Dr. F.T. Friedberg "does not support [Wilkerson's] position that any omissions or misstatements in his bankruptcy schedules were the result of his mental condition at the time he filed the schedules." (Bankr. Doc. 27, p.7) Specifically, the Bankruptcy Court notes, "the report states that Dr. F.T. Friedberg's observations and conclusions were drawn from his examination of [Wilkerson] on March 1, 2011." (Bankr. Doc. 27, p. 7)

Moreover, the Bankruptcy Court notes that, "Dr. Friedberg *did not* examine [Wilkerson] in or around the time period he filed his schedules." (Bankr. Doc. 27, pp. 7-8) The Bankruptcy Court concluded, "Dr. Friedberg could not opine on [Wilkerson's] mental condition based on a direct examination of [Wilkerson] at the time he filed the bankruptcy schedules in the 2008 case." (Bankr. Doc. 27, p. 8) Therefore, the Bankruptcy Court did not "ignore" or "disregard" the opinion offered by Dr. F.T. Friedberg, it instead found the testimony on Wilkerson's state of mind during the time period where Wilkerson filed his schedules in the 2008 case, to not be credible. Thus, the Bankruptcy Court committed no error on this point and this Court AFFIRMS the Bankruptcy Court's Order (Bankr. Doc. 29) entered on February 29, 2012.

## Motion for a New Trial or Alternatively, to Allow Additional Evidence.

Wilkerson next appeals from an Order denying Wilkerson's "Motion for a New Trial or Alternatively, to Allow Additional Evidence" dated May 8, 2012. (Doc. 3-30) Wilkerson cites Federal Rules of Bankruptcy Procedure, Rule 9023 which incorporates Federal Rule of Civil Procedure, Rule 59 applies to this case. Specifically Rule 9023 states, "[a] motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. "Generally, the denial of a motion to alter or amend is reviewed under an abuse of discretion standard." *U.S. v. Colvin*, 203 B.R. 930, 935 (N.D. Tex. 1996) (citing *Edward H. Bohlin Co. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993). Wilkerson's motion was brought pursuant to Fed. R. Civ. P. 52(b), which states, "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings - or make additional findings - and may amend the judgment accordingly. The motion may accompany

a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b).[5] Nevertheless, Wilkerson's "Motion for a New Trial or Alternatively, to Allow Additional Evidence" is brought pursuant to FRCP 52(b) and FRCP 59(a).

The purpose of Rule 52(b) is, generally, to correct manifest errors of law or fact or, in limited situations, to present newly discovered evidence. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986). "This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial, but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Id.* To prevail on a Rule 52(b) motion to amend, the moving party must show that the Court's findings of fact or conclusions of law are not supported by evidence in the record. *Id.* Fifth Circuit review of [a] district court's decision to grant or deny a Rule 59(a) motion will be reversed only for an abuse of discretion. *Flores,* 981 F.2d at 237; *Treadaway v. Societe Anonyme Louis–Dreyfus,* 894 F.2d 161, 164 (5th Cir.1990). Our review of a bankruptcy court's decision is governed by the same standards of review employed by the Fifth Circuit when reviewing a district court judgment. *Beard v. U.S. Tr.*, 188 B.R. 220, 222 (W.D. La. 1995) *aff'd sub nom. In re Beard*, 84 F.3d 431 (5th Cir. 1996)

Substantively, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and **the burden of showing harmful error rests on the party seeking the new trial**." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir.1999) (internal quotations omitted) (emphasis added). *In re Positive Health Mgmt., Inc.*, 08-31630, 2012 WL 3929799 (Bankr. S.D. Tex. Aug. 2, 2012) *report and recommendation adopted*, BR 08-31630, 2012 WL 3929900 (S.D. Tex. Sept. 7, 2012). *Jones v. Ruiz*, 478 F. App'x

---

[5] Wilkerson does not cite to Federal Rule of Bankruptcy Procedure, Rule 7052, which incorporates Federal Rule of Civil Procedure, Rule 52.

-13-

525 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 340, 184 L. Ed. 2d 201 (U.S. 2012)

834, 836 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 340, 184 L. Ed. 2d 201 (U.S. 2012) The Bankruptcy Judge denied Wilkerson's motion noting the motion lacked merit. (Bankr. Doc. 33) Although, no reason beyond the lack of merit was given by the Bankruptcy Court, this Court notes the burden of proof rested with Wilkerson to show he was due the relief requested and the Bankruptcy Court found Wilkerson did not meet that burden.  This Court agrees after full review of the record; this Court could find no evidence, nor any argument by Wilkerson sufficient to satisfy the prerequisites to justify granting a new trial.  After a full review of the record, and of the substance of the motion filed by Wilkerson, this Court does not find that the Bankruptcy Court abused its discretion in denying Wilkerson's "Motion for a New Trial or Alternatively, to Allow Additional Evidence" as lacking merit.  Therefore, this Court AFFIRMS the Bankruptcy Court's Order (Bankr. Doc. 33) entered May 8, 2012.

## V. Conclusion[6]

After a review of the record, and of the substance of the motion filed by Wilkerson, this Court does not find that the Bankruptcy Court committed error. Therefore, this Court AFFIRMS the Bankruptcy Court's Order entered February 29, 2012 revoking Wilkerson's Chapter 7 discharge.

Further, After a review of the record, and of the substance of the motion filed by Wilkerson, this Court does not find that the Bankruptcy Court abused its discretion in denying Wilkerson's "Motion for a New Trial or Alternatively, to Allow Additional Evidence." Therefore, this Court AFFIRMS the Bankruptcy Court's Order entered May 8, 2012.

Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the Clerk of Court is DIRECTED to prepare, sign, and enter judgment upon receipt of and in accordance with this

---

[6] This Court notes that it has reviewed Appellee's contention that a lack of a trial transcript is grounds for dismissing the instant appeal.  Because this Court was able to use the record presented on appeal and the Appellee has been granted the relief it requested this point is MOOT and this Court need not address this argument.

Memorandum Opinion and Order.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___18___ day of July, 2013.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE